**Sandra TODD, etc., et al., Plaintiffs,**

v.

**CITY OF CHICAGO, et al., Defendants.**

No. 96 C 5247.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 7, 1998.

Randall W. Schwartz, James D. Montgomery and Associates, Ltd., Chicago, IL, for Plaintiffs.

Thaddeus S. Machnik, Assistant Corporation Counsel, City of Chicago, Chicago, IL, for Defendants.

### MEMORANDUM ORDER

SHADUR, Senior District Judge.

City of Chicago ("City") has filed its motion for summary judgment on Counts I and II of the Second Amended Complaint ("SAC") brought against City and the estate of now-deceased City Police Officer Raymond Armstrong ("Armstrong")[1] by the successors

---

**1.** Armstrong's later death stemmed from causes wholly unrelated to the subject matter of this litigation.

in interest of decedent Blake Todd ("Todd")—Sandra Todd as independent administrator of his estate and Karen Clayborne-Todd and Adriane Phillips as respective parents and next friends of Todd's minor children. Although only City has advanced such a motion (complying with both Fed. R.Civ.P. ("Rule") 56 and this District Court's General Rule ("GR") 12(M) implementing Rule 56), the success of that motion could well dispatch this entire lawsuit: City's asserted ground for disposition of the state-law claims against it (the previously-asserted federal claims have been waived) is that Armstrong was not on duty and was not acting within the scope of his employment at the time of his confrontation with Todd that resulted in Todd's death, so that respondeat superior would not apply—and if that position were upheld as a matter of fact and law, it would in turn also appear to control the 42 U.S.C. § 1983 ("Section 1983") claims advanced against Armstrong's estate, because Armstrong would not have been acting "under color of law."

City's Mem. 1 makes this flat-out assertion at the end of its *Introduction* section:

> Based upon the uncontested facts and the arguments presented herein, Armstrong was not acting within the scope of his employment and, therefore, summary judgment must be granted in the City's favor.

Then Mem. 2's summary of City's GR 12(M) statement purports to support that assertion by stating that when Armstrong confronted Todd and his associate, Armstrong never identified himself as a police officer or told them that they were under arrest until *after* Armstrong's drawn gun had discharged, killing Todd by a bullet to the head. And if that were indeed so, the numerous cases and other authorities cited by City would at a minimum present a strong case for granting its Rule 56 motion.

■ But the problem is that City's version is not at all "uncontested" as it claims. That contention is truly extraordinary in light of Armstrong's own statements to the contrary—not just once but a number of times:

1. After the occurrence that resulted in Todd's death, Armstrong wrote and signed a report to his District Commander (in police jargon a "To–From" memorandum) that expressly said this about Armstrong's initial encounter with Todd and his associate:

> As I approached them I identified myself as a police officer, told them they were under arrest for stealing my fence.

Only thereafter, according to Armstrong, did his confrontation with Todd result in the physical tussle that ended with the fatal shooting.

2. Chicago Police Officer Joseph Adams testified that when he was called to the scene of the shooting just after that occurrence, he spoke with Armstrong to obtain his version of events and received this response (Dep.18–19):

> He related to me that he was driving past his building at 67th and Cornell. He observed two male blacks, one with a blow torch attempting to remove his wrought iron fence around his property. He got out of his vehicle and approached the two of them and identified himself as a police officer and ordered them to lay down on the ground, on the sidewalk and explain to them that they were being placed under arrest for theft.

3. Chicago Police Detective Ted Przepiora testified that he later interviewed Armstrong and received this identical account of events (Dep.26–27):

Officer Armstrong stated that he pulled up in front of his house, and he seen two male subjects torching the wrought iron fences from in front of his house. He jumped out of his van, announced his office, and drew his weapon. He said he stood over one of the subjects, which we now know as Todd, and told him—told him that he was a police officer, and that the torch—one of the subjects released the torch, at which time he picked up the torch.

4. And to precisely the same effect, Chicago Police Lieutenant Marie Johnston also interviewed Armstrong, who gave this account (her Dep. 58–59 confirms Lieutenant Johnston's contemporaneous written report that included this excerpt):

In summary, P.O. Armstrong stated that he observed 2 males using a torch to steal his fence. He announced he was a police officer and drew his weapon.

■■■ If any one or more of those statements is or are admissible in evidence, they create an obvious and material factual issue that would preclude the entry of summary judgment. It would present a classic case calling for the factfinder to determine whether Armstrong was indeed acting within the scope of his employment, rather than engaging in a purely personal endeavor: what from common law times to the present has been termed the distinction between a "frolic" of the employee's own (the last-mentioned alternative) and a "detour" sufficiently related to employment (the first-mentioned alternative)—see, e.g., *Pyne v. Witmer*, 129 Ill.2d 351, 360, 135 Ill.Déc. 557, 543 N.E.2d 1304, 1309 (1989) and authorities cited there. And on that score Fed.R.Evid. ("Evid.Rule") 801(d)(2)(D) renders Armstrong's statements admissible against City as nonhearsay (Armstrong's intervening death makes no difference under the approach taught in such cases as *Savarese v. Agriss*, 883 F.2d 1194, 1200–01 (3d Cir.1989)).[2] As the 1997 amendment to Evid.Rule 801(d)(2) has confirmed, those statements may themselves be considered (though they are not alone enough) to establish the agency at issue—a codification of the principle announced in *Bourjaily v. United States*, 483 U.S. 171, 177–91, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) (see the Advisory Committee Notes to the 1997 amendment, joined in by this Court as a member of the Advisory Committee).

Accordingly City's motion is denied. This action will proceed to trial against City as well as against Armstrong's estate.

---

**2.** Although this point does not bear on City's motion, it is even more plain that Evid.Rule 801(d)(2)(A) makes the same statements admissi-

ble against Armstrong's estate for purposes of the Section 1983 claims advanced against it but not against City.