[Cite as *Huth v. Kus*, 2018-Ohio-1931.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| | : | JUDGES: |
| IRVIN W HUTH, ET AL | : | Hon. John W. Wise, P.J. |
| | : | Hon. W. Scott Gwin, J. |
| Plaintiffs-Appellants | : | Hon. William B. Hoffman, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 2017 AP 06 0015 |
| TAMA KUS, ADMINISTRATOR, | : | |
| ESTATE OF BRYON L. HOLBROOK | : | |
| | : | OPINION |
| Defendant-Appellee | | |

CHARACTER OF PROCEEDING:     Civil appeal from the Tuscarawas County
Court of Common Pleas, Case No.
2014VR110681

JUDGMENT:     Affirmed in part; Reversed in part;
Remanded

DATE OF JUDGMENT ENTRY:     May 14, 2018

APPEARANCES:

For Plaintiffs-Appellants

MICHELA HUTH
P.O. Box 17
Bolivar, OH 44612

For Defendant-Appellee

GREGORY BECK
ANDREA ZIARKO
400 South Main St.
North Canton, OH  44720

*Gwin, J.,*

{¶1} Appellants Irvin W. and Kay V. Huth [collectively "Huths"] appeal the May 4, 2017 Judgment Entry after a bench trial in the Tuscarawas County Court of Common Pleas.

*Facts and Procedural History*

**The parties.**

{¶2} In March 2014, the Huths entered into a written contract with Bryon L. Holbrook ["Holbrook"] whereby they loaned him $25,000.00 and in exchange were given a security interest in certain items of personal property owned by Holbrook and/or his two companies, HES Group, Inc. and Diamond Dustless Blasting. Huths also have alleged that they entered into a verbal agreement with Holbrook whereby they loaned him an additional $29,500.00, unsecured. *See, Huth v. Tama Kus, Adm. Estate of Byron L. Holbrook,* 5th Dist. Tuscarawas Nos. 2014 AP 10 0041, 2014 AP 10 00052, 2015-Ohio-3457, ¶2. [Hereinafter *Huth I"*].

{¶3} Holbrook died intestate on or about July 16, 2014. On or about August 5, 2014, his estate administration was opened. *Huth I,* ¶3. Defendant/Appellee, Tama Fairbanks (FKA Tama Kus), is the Administrator of the Estate of Bryon L. Holbrook, Tuscarawas County Court of Common Pleas, Probate Division, *In Re: Estate of Bryon L. Holbrook*, Case No. 2014 ES 57825. In the probate proceedings, the Huths' claims against Holbrook's estate were rejected by appellee on September 7, 2014, with said rejection notices being filed with the probate court on September 9, 2014. *Huth I*, ¶8.

**The replevin action.**

{¶4} On August 18, 2014, the Huths filed a "complaint in replevin and motion for order of possession" (R.C. 2737.03) in the Tuscarawas County Court of Common Pleas against appellee Tama Kus, as the administrator of the Bryon L. Holbrook estate. On August 27, 2014, appellee filed an answer and a Civ.R. 12(C) motion for judgment on the pleadings.

{¶5} On September 12, 2014, the trial court issued a six-page judgment entry dismissing the Huths' replevin action, concluding inter alia, "replevin is not appropriate under the complaint, its supporting documents, and answer, and Ohio law." *Huth I*, ¶11. This Court upheld the trial court's decision as well as its decision to deny the Huths' Civ. R. 60 (B) motion. *Huth I.*

{¶6} On November 4, 2015, the Huths filed a motion for leave to file an amended complaint. By Judgment Entry filed January 21, 2016, the trial court granted the Huths' motion.

**The amended complaint.**

{¶7} On January 29, 2016, the Huths filed an amended complaint alleging counts for Replevin, Breach of Contract, Unjust Enrichment and Conversion. In their amended complaint, the Huths alleged the balance due on the secured loan was $22,973.56 plus interest[1]; the balance due on the unsecured loan was $22,057.44 plus interest[2]; and the balance due under both the unsecured and secured loans equals $45,031 plus interest[3]. The Huths requested $45,031.00 plus interest as their prayer for relief. Nowhere in the

---

[1] ¶52
[2] ¶53
[3] ¶54.

amended complaint do the Huths set forth a cause of action or a prayer for relief for unpaid rent.

**The bench trial.**

{¶8}   The trial court issued a Pretrial and Scheduling Order on June 8, 2016, wherein the Court ordered, "For trials to the bench, trial briefs shall be filed with the Court, one week before trial, unless leave is otherwise granted."   By Judgment Entry filed January 20, 2017, the trial court, *sua sponte* granted an extension of time to the parties for filing trial briefs on or before January 23, 2017, one day prior to the trial.  The parties were specifically advised to present the trial court with a brief of the legal issues that were being tried to the court, along with the relevant law.  This Judgment Entry was also sent to the parties via facsimile on January 19, 2017 at 2:32 p.m.  The appellee's trial brief was filed on January 23, 2017.  The Huths failed to file a trial brief prior to trial.  On January 25, 2017, the trial court denied the Huths' Motion for Leave to File Post-Trial Brief Instanter to Specifically Respond to Defendant's Trial Brief.  A bench trial took place on January 24, 2017.

**The evidence presented at trial.**

{¶9}   On February 21, 2014, appellant Kay Huth wrote Bryon Holbrook check number 8896 for $10,000.00.   (Plaintiff's Exhibit 1).   The memo line for this check indicated "loan." Holbrook deposited that amount into his checking account on the same day, as both he and Kay were standing at the bank counter.  Bryon's checking account statement showed the deposit of this amount on that day.  Kay testified that Holbrook told

her "you know, mom, I will pay you back. And I said of course Byron I know that." (T. at 14). Appellee's objection was overruled by the trial court. (T. at 11-14).[4]

**{¶10}** Kay testified that Holbrook "asked me if he could have more money, I said yes up to twenty-five thousand dollars you can have." (T. at 21). On March 7, 2014, Kay Huth received $2,500.00 cash from check number 8886 issued from her own bank account. (Plaintiff's Exhibit 4). Kay Huth testified that she gave this amount to Holbrook and he deposited the same into his account immediately upon her handing him the cash. Holbrook's checking account statement shows $2,500.00 deposited into his bank account on the same day.

**{¶11}** On March 12, 2014, Kay Huth wrote check number 8787 to Holbrook for $12,500.00.[5] (Plaintiff's Exhibit 5). The memo line of this check contained the word "loan." Kay testified that Holbrook deposited the check into his checking account the same day, while she and he were standing at the bank counter together. Holbrook's checking account statement shows $12,000.00 deposited into his bank account on March 12, 2014. Kay testified that Holbrook kept $500.00 cash of the $12,500.00 given him at that time, and deposited $12,000.00 into his bank account.

**{¶12}** On March 24, 2014, Kay received $15,000.00 cash from check number 8886 issued from her own bank account. (Plaintiff's Exhibit 7). Kay testified that the $15,000.00 was given to Holbrook who deposited the money directly into his account when she and he were at the bank counter.

---

[4] Appellee subsequently entered a continuing objection and motion to strike all statements made by Byron Holbrook. (T. at 15).

[5] Although the date on the check is Mar 17, 2014, the testimony at trial revealed that the transaction actually had taken place on March 12, 2014. (T. at 21-22).

{¶13} Kay testified that her own mother had passed away in January 2014, and Kay planned to buy her mother's home. T. at 26. Kay testified that she was informed by her bank that the easiest way to purchase her mother's house was to increase her personal line of credit ("PCL"). T. at 26. A new PCL was created based upon the additional money loaned to Kay by the bank so that she could buy her mother's home. T. at 27. Kay testified that the $15,000 she provided to Holbrook on March 24, 2014 came from this new PCL. T. at 26.

{¶14} On March 26, 2014, the Huths entered into a written agreement with Holbrook, which provided that Huths, "loaned [Holbrook] $25,000" and in consideration for the loan, Holbrook agreed to repay the principal amount of $25,000 with variable interest. (Plaintiff's Exhibit 16). The Note, which was prepared by Huths' attorney and daughter, Michela Huth, further provided that Holbrook would repay the loan on a monthly basis of $449.11 for four years. (Id.). An attorney did not represent Holbrook. Based upon the express terms of the Note, the total repayment equaled $21,557.28 (48 months at $449.11 per month).

{¶15} The agreement also provided that Holbrook assigned a security interest in certain collateral, which included a Voyager Pontoon Boat, a Johnson Inboard Motor (attached to the pontoon boat), a 2012 Kawasaki STX15F Jet Ski, a 2014 Load Rite Trailer, a 2013 Arctic Cat, and a Mihindra Tractor. (Plaintiff's Exhibit 16 at 1(a) and Exhibit A, attached to Plaintiff's Exhibit 16). Holbrook's death triggered the default clause of the agreement. Id. at ¶8.

{¶16} At the time of the trial, the Huths were in possession of several of these items, specifically the pontoon boat, motor, and trailer, valued at $4,800, and the

Mahindra Tractor, valued at $11,950. (Judgment Entry at 7). The trial court found appellee was in possession of the Arctic Cat, and that the Kawasaki Jet Ski was repossessed. (Judgment Entry, at 8, 19).

{¶17} Appellant Irvin Huth testified that Holbrook had telephoned him saying "I need the money badly could you come into the bank." (T. at 83). On April 24, 2014, appellant Irvin Huth received $2000.00 in cash from a check issued from the PCL account. (Plaintiff's Exhibit 18). Holbrook immediately deposited cash of $2000.00 into his bank account. Irvin further testified, "I believed that Byron would pay and I expected him to pay. In fact, I, he and I had a couple of conversations that this was very important to us, that yes we wanted to help but it meant we were mortgaging our home, and this was a very serious thing. And Byron did make payments and we did continue to give him money at the [bank]." T. at 80-81.

{¶18} On April 30, 2014, Kay received $12,500.00 cash from the PCL account. (Plaintiff's Exhibit 9). When Kay gave Holbrook the money, he deposited it into his checking account on the same day. Holbrook's checking account statement reflects a deposit of $12,500.

{¶19} Kay Huth testified that on June 3, 2014, Holbrook approached her at the bank and "he says mom look, I paid three thousand dollars on the PCL, he was like a little boy, real proud of what he had done." T. at 33.

{¶20} Prior to Holbrook's death, he paid $14,800.00 to the Huths. The Huths contend that of that amount, he paid $4,800.00 for four months' rent. Holbrook lived with the Huths' daughter and personal attorney, Michela Huth, in a home owned by the Huths.

**The trial court's decision.**

{¶21} The trial court issued its ruling on May 4, 2017, in which it denied the Huths' demand for replevin. The court ordered judgment in the amount of $1,957.28 in favor of the Huths, in part, on their breach of contract claim as it pertained to the written agreement. The trial court found the Huths failed to prove the existence of an oral contract by clear and convincing evidence and therefore denied the Huths' breach of contract claim as to the alleged oral agreement. The court further denied the Huths' claims for unjust enrichment and conversion.

{¶22} In reaching these conclusions, the trial court reversed the ruling made during the Huths' case-in-chief finding the statements of Holbrook to be admissible:

> The Court FINDS that the Defendant's objection to the hearsay statements of the decedent, Bryon L. Holbrook, is well taken. Although the Court permitted the testimony to proceed during the bench trial, such statements have been disregarded by the Court as impermissible hearsay. The Court has made no Findings of Fact regarding the statements of the decedent, as such evidence must be utilized only for purposes of rebuttal. The proceedings and presentation by the Defendant did not give rise to rebuttal.

*Judgment Entry,* May 4, 2017 at 18.

*Assignments of Error*

{¶23} The Huths raise five assignments of error,

{¶24} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION, AND PREJUDICED APPELLANT, WHEN IT REVERSED ITS OWN HEARSAY EVIDENTIARY RULING AFTER THE TRIAL WAS CONCLUDED.

{¶25} "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION, AND PREJUDICED APPELLANT, WHEN IT DISREGARDED EVIDENCE, WHICH IT INCORRECTLY FOUND TO BE INADMISSIBLE HEARSAY.

{¶26} "III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND THE APPELLANTS/PLAINTIFFS FAILED TO PROVE THE EXISTENCE OF AN ORAL CONTRACT FOR REPAYMENT OF THE $31,50000 [SIC] THAT WAS ALLEGEDLY LOANED TO BRYON HOLBROOK.

{¶27} "IV. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND NO EVIDENCE OF A RENTAL AGREEMENT WAS PRESENTED AT TRIAL.

{¶28} "V. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND THE APPELLANTS/PLAINTIFFS FAILED TO PROVE THE RIGHT TO RECOVER FOR UNJUST ENRICHMENT."

I., II., III. & V.

{¶29} The Huths' First and Second Assignments of Error concern the trial court ruling during trial that Holbrook's statements were admissible, and then reversing that ruling after the case had been submitted after the conclusion of the evidence. The Huths' Third and Fifth assignments of error concern the evidence of the existence of an oral contract and evidence of their right to recover for unjust enrichment.

**Standard of Appellate Review.**

**{¶30}** "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). "Ordinarily, we review a trial court's hearsay rulings for an abuse of discretion. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). However, "[w]hether evidence is admissible because it falls within an exception to the hearsay rule is a question of law, thus, our review is de novo." *State v. Truitt*, 9th Dist. No. 25527, 2011–Ohio–6599, ¶ 24 (*quoting Monroe v. Steen*, 9th Dist. No. 24342, 2009–Ohio–5163, ¶ 11.

ISSUE FOR APPEAL

*Whether the statements of Byron Holbrook were admissible at trial.*

**{¶31}** "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the recognized exceptions. Evid.R. 802; *State v. Steffen*, 31 Ohio St.3d 111, 119, 509 N.E.2d 383(1987).

**{¶32}** "The hearsay rule…is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener. And the ways in which these dangers are minimized for in-court statements-the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most

importantly, the right of the opponent to cross-examine-are generally absent for things said out of court." *Williamson v. United States*, 512 U.S. 594, 598,114 S.Ct. 2431, 2434(1994).

**{¶33}** In ruling subsequent to trial that the statements were not admissible, the trial court relied upon Evid. R. 804 which provides in relevant part,

**(B) Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

* * *

(5) Statement by a Deceased or Incompetent Person. The statement was made by a decedent or a mentally incompetent person, where all of the following apply:

(a) the estate or personal representative of the decedent's estate or the guardian or trustee of the incompetent person is a party;

(b) the statement was made before the death or the development of the incompetency;

(c) the statement is offered to rebut testimony by an adverse party on a matter within the knowledge of the decedent or incompetent person.

**{¶34}** The 1980 staff notes to Evidence Rule 804(B) (3) indicate, "[t]his declaration against interest applies to statements of persons *other than parties to the action and should be distinguished from statements of parties to the action.*" *See, Volpe v. Heather Knoll Retirement Village,* 9th Dist. Summit No. 26215, 2012-Ohio-5404, ¶17 (emphasis added).

**Statements of a party opponent are not hearsay under Evid. R 801(D)(2).**

**{¶35}** Evid. R 801 provides,

(D) **Statements Which Are Not Hearsay.** A statement is not hearsay if:

*(2) Admission by Party-Opponent.* The statement is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity, or (b) a statement of which the party has manifested an adoption or belief in its truth, or (c) a statement by a person authorized by the party to make a statement concerning the subject, or (d) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (e) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy.

Emphasis in original.

**{¶36}** The First District Court of Appeals addressed this distinction between Evid.R. 801(D)(2) and 804(B)(3):

Evid.R. 804(B)(3) provides that a statement against interest may be admitted under certain circumstances as an exception to the hearsay rule. But Evid.R. 804(B)(3) does not apply to statements *made by a party to the action.* 1993 Staff Note to Evid.R. 804(B)(3). A statement made by a defendant is considered an "admission," and is governed by Evid.R. 801(D)(2). An "admission" and a "statement against interest" reflect *two*

*distinct concepts and different rules of admissibility apply to each.  See*

*Ferrebee v. Boggs,* 24 Ohio App.2d 18, 263 N.E.2d 574 (4th Dist. 1970).

*State v. Webster,* 1st Dist. Hamilton No. C-120452, 2013-Ohio-4142, ¶66 (emphasis added).  *Accord, State v. Phillips,* 8th Dist. Cuyahoga No. 104806, 2017-Ohio-1284, ¶29.  In *Ferrebee v. Boggs,* the court observed,

It is generally accepted that a distinction exists, both in theory and practical effect, between statements by a party to a suit, termed admissions, and declarations of fact by third persons against their interest.  4 Wigmore on Evidence (3 Ed.) 6, Section 1049.  This distinction, however, has not always been observed by Ohio courts.  See Admissions 'Against Interest' in Ohio, 15 Ohio St.L.J. 187.  It is observed by Wigmore that universally statements by a party opponent are admissible.  4 Wigmore on Evidence (3 Ed.) 2, Section 1048.  Whether the theory of admissibility is that such statements are non-hearsay or an exception to the rule, to be admissible it must be against some interest of the party at trial and not at the time made, and no foundation need be laid and no requirement of proof of the absence of the declarant is necessary.  2 Jones on Evidence (5th Ed.), 630 et seq., Section 334 et seq.; 4 Wigmore on Evidence (3 Ed.), 2 Section 1049.

24 Ohio App.2d 18, 23, 263 N.E.2d 574(1970); Accord, *Romay v. Mayfair Pool & Supplies,* 6th Dist. Lucas No. L-86-093, 1986 WL 15063 (Dec. 31, 1986).

**_Statements of a decedent are admissible against his or her estate as admissions against a party opponent._**

**{¶37}**  The Court in *Ferrebee* further observed,

Another important distinction is that admissions by a party are not only admissible against him, but, likewise, are admissible against those in privity with him.  4 Wigmore on Evidence (3 Ed.), 25, Section 1060.

Applying the above principles, was the proffered testimony admissible?  We consider, first, the question of admissibility as an admission in the second cause of action for pain, suffering and expenses prior to death.  This action survived by virtue of R.C. 2305.21 and was for the benefit of the estate.  The plaintiff administratrix was, therefore, in the same position as the deceased had he survived.  Clearly, the admission would have been admissible against the decedent and, hence, the dead-man's statute aside, was admissible against the plaintiff.  See 2 Jones on Evidence (5 Ed.) 644, Section 342.

24 Ohio App.2d 18, 25, 263 N.E.2d 574.   Indeed, "[n]o modern court doubts that a *decedent,* whose rights are transmitted intact to his successor, is a person whose admissions are receivable against a party claiming the decedent's rights as *heir, executor, or administrator*," *Estate of Shafer v. C.I.R.,* 749 F.2d 1216, 1219 (6th Cir. 1984) (*citing* IV J. Wigmore, Evidence in Trials at Common Law § 1081 (1972) (emphasis in original)). In *Estate of Shafer*, the Sixth Circuit held that the Tax Court properly admitted the statements of decedent made to his sons as admissions of decedent's estate.  In addition, the Third Circuit has affirmed a district court's rulings that the statements of a deceased defendant were properly admitted as admissions by a party opponent.  *Savarese v. Agriss*, 883 F.2d 1194, 1201 (3rd Cir.1989).  In so holding, the Third Circuit stated, "we

have, on a prior occasion, suggested that an admission by a party-opponent may be admissible when the party is deceased at the time of the trial."  Id.

**{¶38}**  In *Fischer v. Forestwood Company, Inc.,* the Tenth Circuit observed*,*

[C]ourts have consistently rejected the argument that for an admission by a party opponent to be admissible, the declarant must be available for cross-examination. *See, e.g., Savarese v. Agriss*, 883 F.2d 1194, 1201 (3d Cir.1989) ("[A] statement by a declarant, deceased at the time of trial, may be admissible under ... Fed.R.Evid. 801(d)(2)(D)."); *Auto–Owners Ins. Co. v. Jensen,* 667 F.2d 714, 722 (8th Cir.1981) (explaining that admissions by a party opponent do not need to be subjected to cross-examination in order to be admissible).  The reason cross-examination is not required is because the "admissions doctrine amounts to a logical expression of the philosophy of the adversary system and is closely connected with the personal freedom and responsibility that are part of life in a free society: In the case of individual admissions, it seems appropriate to point out that parties bear the lion's share of responsibility for making or breaking their own cases, and lawsuits are focused inquiries into personal rights and social responsibilities.  These ideas make it reasonable to say that one cannot claim that his own statement should be excluded because it was not made under oath or subject to cross-examination or in view of the trier of fact."  4 Mueller & Kirkpatrick, Federal Evidence § 8:44 (3d ed.2007) (internal citations omitted); *see also* Fed.R.Evid. 801 advisory committee's note ("Admissions by a party-opponent are excluded from the category of

hearsay on the theory that their admissibility in evidence is the result of the

adversary system.... No guarantee of trustworthiness is required in the case

of an admission.").

525 F.2d 972, 984-985(10th Cir. 2008); *Accord, United States v. Ballou*, 59 F.Supp.3d

1038, 1060 (D.New Mexico 2014). In *Sherif v. Astrazenca*, the court echoed the holding

that a decedent's statements as not hearsay,

> The Advisory Committee Notes state that "[n]o guarantee to
> trustworthiness is required in the case of an admission." Fed.R.Evid.
> 801(d)(2). It has generally been stated that "admissions pass the gauntlet
> of the hearsay rule, which requires that extra-judicial assertions be excluded
> if there was no opportunity for the opponent to cross-examine because it is
> the opponent's own declaration, and 'he does not need to cross-examine
> himself.' ' 2 John W. Strong, McCormick on Evidence § 254 at 136 (5th
> ed.1999). Moreover, the party "now as opponent has the full opportunity to
> put himself on the stand and explain his former assertion." Id. (quotation
> omitted). The Third Circuit Court of Appeals has held that even the death
> of the declarant does not render such statements inadmissible but impacts
> on the weight of the evidence rather than its admissibility. *Savarese v.
> Agriss*, 883 F.2d 1194, 1201 (3d Cir.1989).

E.D.Pa. No. Civ.A. 00-3285, 2002 WL 32350023 (May 9, 2002) at *3.

{¶39} The death of the party does not make the statements hearsay; rather the

fact that the party is deceased goes to the weight of the evidence,

However, Stiglich's intervening death does [not] change the applicability of Rule 801(d) (2)(A) or render his statements, in this context as statements of a party opponent, hearsay. *See Savarese v. Agriss*, 883 F.2d 1194, 1200-01 (3d Cir .1989) (holding that "the impact of the declarant's death impacts on the weight of the evidence rather than its admissibility;" noting the tactical risk a plaintiff assumes [is] that a jury is likely to discredit the purported utterance of the deceased party opponent simply because it is being offered); *see also White v. Honeywell*, 141 F.3d 1270, 1277 (8th Cir.1998) (reasoning that the availability of the declarant is not relevant under Rule 801(d)(2)(D) because under the rule, the statement is not hearsay); *Thomas D. Wilson Consulting, Inc. v. Keely & Sons, Inc.*, No. 4:05CV2115, 2007 WL 1774434, at *7 n. 2 (E.D.Mo. June 18, 2007); *Todd v. City of Chi.,* 28 F.Supp.2d 1062, 1064 (N.D.Ill.1998) (*citing Savarese*, 883 F.2d at 1200-01).

*Swiss v. Stiglich,* N.D. Indiana No. 2:05-CV-203-PRC, 2008 WL 763015 (Mar 20, 2008), at *5.

### Conclusion.

{¶40} The trial court erred when it denied the admissibility of Holbrook's statement based upon Evid. R. 804(B)(5) because Holbrook's statements were admissible under Evid.R. 801(D)(2) as admissions of a party opponent.

{¶41} It was fundamentally unfair for the trial court to reverse the ruling that allowed the statements to be considered and then exclude the statements after the trial had ended.  The proponent of the statements had no opportunity to present other,

admissible evidence to carry its burden of proof.  The proponent of the evidence may have forgone presentation of additional evidence in reliance upon the trial court's ruling that it would consider the hearsay statements of Holbrook.

{¶42}  Additionally, the trial court, as the trier of fact may have reached a different conclusion on the issues of the existence of an oral contract and the Huths' right to recover for unjust enrichment had the trial court considered the statements made by Holbrook.

{¶43}  The Huths' First and Second Assignments of Error are sustained.  In light of our holding, we overrule the Huths' Third and Fifth Assignments of Error as being premature.[6]

IV.

{¶44}  In their Fourth Assignment of Error, the Huths contend that the trial court abused its discretion in finding no evidence that Holbrook and the Huths had an agreement for Holbrook to pay rent.

**Standard of Appellate Review.**

{¶45}  In *Kostelnik v. Helper*, 96 Ohio St.3d 1, 16, 2002-Ohio-2985, 770 N.E.2d 58, the Ohio Supreme Court described the requirements for formation of a contract:

> A contract is generally defined as a promise, or a set of promises, actionable upon breach.  Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.

---

[6] We express no opinion on the merits of the Huths' causes of action for breach of an oral contract or unjust enrichment.

**{¶46}** The Supreme Court has further explained, "[a] meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Kostelnik,* citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991). And to be enforceable, "the contract must be definite and certain." *Episcopal Retirement Homes* at 369, 575 N.E.2d 134, *citing James Ward & Co. v. Wick Bros. & Co.*, 17 Ohio St. 159 (1867).

ISSUE FOR APPEAL

*Whether the trial court erred in finding insufficient evidence of a contract to pay rent.*

**{¶47}** The evidence contained within the record demonstrates that Holbrook lived with the Huths' daughter. The Huths' are represented in this case by that same daughter. The house that Holbrook and Michela Huth lived in was the home that was purchased from Kay Huth's mother. (T. at 52). No documentation exists to demonstrate how the money that Holbrook paid the Huths was applied to his obligations. (T. at 51-53). None of the rental terms or length of the contract was presented in evidence.

**{¶48}** In the case at bar, the evidence presented does not expressly set out the parties' mutually agreed-upon obligations in terms that are definite and certain. Although Kay Huth testified that Holbrook agreed to pay rent, a rational basis exists in the record to support the trial court's decision.

**{¶49}** The Huths' Fourth Assignment of Error is overruled.

{¶50} The judgment of the Tuscarawas County Court of Common Pleas is reversed in part and affirmed in part and this case is remanded to the trial court for proceedings in accordance with our opinion and the law.

By Gwin, J.,

Wise, P.J., and

Hoffman, J., concur