[Cite as *Huth v. Kus*, 2020-Ohio-2687.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IRVIN W. HUTH, ET AL. | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiffs-Appellants/Cross- | : | Hon. Patricia A. Delaney, J. |
| Appellees | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| | : | Case No. 2019 AP 06 0020 |
| | : | |
| TAMA KUS (NKA TAMA KUS | : | |
| FAIRBANKS) ADMINISTRATOR OF | : | |
| ESTATE OF BRYON L. HOLBROOK | : | |
| | : | |
| | : | |
| Defendant-Appellee/Cross- | : | O P I N I O N |
| Appellant | : | |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Tuscarawas County Court of Common Pleas, Case No. 2014 VR 11 0681 |
| JUDGMENT: | AFFIRMED IN PART; REVERSED IN PART |
| DATE OF JUDGMENT ENTRY: | April 27, 2020 |

APPEARANCES:

For Plaintiffs-Appellants:

MICHELA HUTH
P.O. Box 17
Bolivar, OH 44612

For Defendant-Appellee:

GREGORY A. BECK
400 South Main Street
North Canton, OH 44720

*Delaney, J.*

{¶1}  Plaintiffs-Appellants/Cross-Appellees Irvin Huth and Kay Huth and Defendant-Appellee/Cross-Appellant Tama Kus, Administrator of the Estate of Byron L. Holbrook, appeal the May 8, 2019 judgment entry of the Tuscarawas County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

### Security Agreement and Note

{¶2}  In March 2014, Plaintiffs-Appellants/Cross-Appellees Irvin and Kay Huth entered into a written contract with Bryon L. Holbrook ["Holbrook"] whereby they loaned him $25,000.00 and in exchange were given a security interest in certain items of personal property owned by Holbrook and/or his two companies, HES Group, Inc. and Diamond Dustless Blasting. The Security Agreement and Note was drafted by the Huths' attorney. The Security Agreement and Note provided that "[t]he Secured Party [the Huths] has loaned the Debtors [Holbrook] $25,000 (twenty-five thousand dollars). In consideration of this loan, the Debtors agree to repay the principal amount of $25,000 with variable interest, currently 2.99 percent. Interest rate is variable, and if and when interest rate changes, debtors will be notified and the monthly payment will change accordingly." The Note further provided that "Debtors agree to repay the loan on a monthly basis and the term of repayment is four years. The monthly payment amount will include the principal amount plus interest. The monthly payment will be $449.11 (four hundred and forty nine dollars and eleven cents)." Based on the terms of the Note, the total repayment equaled only $21,557.28 (48 months at $449.11 per month). The Huths and Holbrook did not execute the Note until after the Huths had already loaned Holbrook over $25,000.

{¶3}   Paragraph 2 of the Security Agreement stated that "[t]o secure the Obligations, the Debtors, as debtors, hereby assigns and grants to the Secured Party, as secured party, a continuing lien on and security interest in the Collateral." Paragraph 1(a) provides that "Collateral" shall include the Debtors' tangible personal property, fixtures, leasehold improvements, trade fixtures, equipment and other personal property described in Exhibit A. Exhibit A listed the following relevant items as collateral: "(1) Voyager Pontoon Boat; (2) Johnson inboard motor (attached to Voyager Pontoon Boat); (3) 2012 Kawasaki STX15F Jet Ski; (4) 2014 Load Rite Trailer; (5) 2013 Artic Cat; and (6) Mahindra Tractor (the value of the tractor plus the authorization to take over the financing)."

{¶4}   Paragraph 8 and 9 of the Security Agreement stated the terms in the event of default. A failure to pay any amount due under the Note or Agreement within ten days was a default. Upon the event of a default, the Huths were permitted to declare all obligations secured immediately due and payable. The Huths were further permitted to take possession of the collateral without prior notice to Holbrook or they could require Holbrook to assemble the collateral and make it available to the Huths.

{¶5}   Finally, Paragraph 17 of the Security Agreement provided that the Agreement was binding upon Holbrook's heirs, executors, administrators, successors, and assigns.

{¶6}   The Huths also alleged they entered into an oral agreement with Holbrook and loaned him an additional $32,000.00.

**Probate Action**

{¶7}   Holbrook died intestate on or about July 16, 2014. On August 5, 2014, his estate administration was opened in the Tuscarawas County Court of Common Pleas,

Probate Division, Case No. 2014 ES 57825. Holbrook's mother, Defendant-Appellee/Cross-Appellant Tama Kus, became the Administrator of the Estate of Bryon L. Holbrook. On August 14, 2014, the Huths filed two creditors' notices of claim, pursuant to R.C. 2117.06. Kus rejected the Huths' claims against Holbrook's estate on September 7, 2014 and filed on September 9, 2014.

### Replevin Action

{¶8}   On August 18, 2014, the Huths filed a "complaint in replevin and motion for order of possession" (R.C. 2737.03) in the Tuscarawas County Court of Common Pleas against Kus, as the administrator of the Bryon L. Holbrook estate. Kus responded with a Civ.R. 12(C) motion. On September 12, 2014, the trial court dismissed the Huths' replevin action, concluding inter alia, "replevin is not appropriate under the complaint, its supporting documents, and answer, and Ohio law." In *Huth v. Tama Kus, Adm. Estate of Bryon L. Holbrook*, 5th Dist. Tuscarawas Nos. 2014 AP 10 0041, 2015-Ohio-3457, we upheld the trial court's decision as well as its decision to deny the Huths' Civ. R. 60(B) motion.

{¶9}   On November 4, 2015, the Huths filed a motion for leave to file an amended complaint. By Judgment Entry filed January 21, 2016, the trial court granted the Huths' motion.

### Amended Complaint

{¶10} On January 29, 2016, the Huths filed an amended complaint asserting four causes of action: (1) Replevin, (2) Breach of Contract (oral and written), (3) Unjust Enrichment, and (4) Conversion. In their amended complaint, the Huths alleged the balance due on the secured loan was $22,973.56 plus interest; the balance due on the

unsecured loan was $22,057.44 plus interest; and the balance due under both the unsecured and secured loans equals $45,031 plus interest. The Huths requested $45,031.00 plus interest as their prayer for relief. Nowhere in the amended complaint do the Huths set forth a cause of action or a prayer for relief for unpaid rent.

{¶11} Kus filed an answer to the first amended complaint on February 19, 2016.

**Bench Trial**

{¶12} A bench trial took place on January 24, 2017.

{¶13} The Huths presented evidence as to the Security Agreement and Note and oral contract. On February 21, 2014, Kay Huth wrote Holbrook a check for $10,000.00. (Plaintiff's Exhibit 1). The memo line for this check indicated "loan." Holbrook deposited that amount into his checking account on the same day, as both he and Kay were standing at the bank counter. Bryon's checking account statement showed the deposit of this amount on that day. Kay testified that Holbrook told her "you know, mom, I will pay you back. And I said of course Bryon I know that." (T. at 14). Kus' objection was overruled by the trial court. (T. at 11–14).

{¶14} Kay testified that Holbrook "asked me if he could have more money, I said yes up to twenty-five thousand dollars you can have." (T. at 21). On March 7, 2014, Kay Huth received $2,500.00 cash from a check issued from her own bank account. (Plaintiff's Exhibit 4). Kay Huth testified that she gave this amount to Holbrook and he deposited the same into his account immediately upon her handing him the cash. Holbrook's checking account statement shows $2,500.00 deposited into his bank account on the same day.

{¶15} On March 12, 2014, Kay Huth wrote check number 8787 to Holbrook for $12,500.00. (Plaintiff's Exhibit 5). The memo line of this check contained the word "loan."

Kay testified that Holbrook deposited the check into his checking account the same day, while she and he were standing at the bank counter together. Holbrook's checking account statement shows $12,000.00 deposited into his bank account on March 12, 2014. Kay testified that Holbrook kept $500.00 cash of the $12,500.00 given him at that time, and deposited $12,000.00 into his bank account.

{¶16} On March 24, 2014, Kay received $15,000.00 cash from check number 8886 issued from her own bank account. (Plaintiff's Exhibit 7). Kay testified that the $15,000.00 was given to Holbrook who deposited the money directly into his account when she and he were at the bank counter.

{¶17} Kay testified that her own mother had passed away in January 2014, and Kay planned to buy her mother's home. T. at 26. Kay testified that she was informed by her bank that the easiest way to purchase her mother's house was to increase her personal line of credit ("PCL"). T. at 26. A new PCL was created based upon the additional money loaned to Kay by the bank so that she could buy her mother's home. T. at 27. Kay testified that the $15,000 she provided to Holbrook on March 24, 2014 came from this new PCL. T. at 26.

{¶18} On March 26, 2014, the Huths entered into a written agreement with Holbrook, which provided that Huths, "loaned [Holbrook] $25,000" and in consideration for the loan, Holbrook agreed to repay the principal amount of $25,000 with variable interest. (Plaintiff's Exhibit 16). The Note, which was prepared by Huths' attorney and daughter, Michela Huth, further provided that Holbrook would repay the loan on a monthly basis of $449.11 for four years. (Id.). An attorney did not represent Holbrook. Based upon

the express terms of the Note, the total repayment equaled $21,557.28 (48 months at $449.11 per month).

{¶19} The agreement also provided that Holbrook assigned a security interest in certain collateral, which included a Voyager Pontoon Boat, a Johnson Inboard Motor (attached to the pontoon boat), a 2012 Kawasaki STX15F Jet Ski, a 2014 Load Rite Trailer, a 2013 Arctic Cat, and a Mihindra Tractor. (Plaintiff's Exhibit 16 at 1(a) and Exhibit A, attached to Plaintiff's Exhibit 16). Holbrook's death triggered the default clause of the agreement.

{¶20} At the time of the trial, the Huths were in possession of several of these items, specifically the pontoon boat, motor, and trailer, valued at $4,800, and the Mahindra Tractor, valued at $11,950. Kus was in possession of the Arctic Cat and the Kawasaki Jet Ski had been repossessed.

{¶21} Irvin Huth testified that Holbrook had telephoned him saying "I need the money badly could you come into the bank." (T. at 83). On April 24, 2014, appellant Irvin Huth received $2000.00 in cash from a check issued from the PCL account. (Plaintiff's Exhibit 18). Holbrook immediately deposited cash of $2000.00 into his bank account. Irvin further testified, "I believed that Bryon would pay and I expected him to pay. In fact, I, he and I had a couple of conversations that this was very important to us, that yes we wanted to help but it meant we were mortgaging our home, and this was a very serious thing. And Bryon did make payments and we did continue to give him money at the [bank]." T. at 80–81.

{¶22} On April 30, 2014, Kay received $12,500.00 cash from the PCL account. (Plaintiff's Exhibit 9). When Kay gave Holbrook the money, he deposited it into his

checking account on the same day. Holbrook's checking account statement reflects a deposit of $12,500.

{¶23} Kay Huth testified that on June 3, 2014, Holbrook approached her at the bank and "he says mom look, I paid three thousand dollars on the PCL, he was like a little boy, real proud of what he had done." T. at 33.

{¶24} Prior to Holbrook's death, he paid $14,800.00 to the Huths. The Huths contend that of that amount, he paid $4,800.00 for four months' rent. Holbrook lived with the Huths' daughter and personal attorney, Michela Huth, in a home owned by the Huths.

**May 4, 2017 Judgment Entry**

{¶25} On May 14, 2017, the trial court issued its judgment entry wherein it denied the Huths' demand for replevin. The trial court ordered judgment in the amount of $1,957.28 in favor of the Huths, in part, on their claim of breach of contract as to the Security Agreement and Note. The trial court found the Huths failed to establish the existence of an oral contract between the Huths and Holbrook and therefore denied their claim for breach of the oral contract. Finally, the trial court denied the Huths' claims for unjust enrichment and conversion.

{¶26} In reaching its decision on the merits, the trial court reversed its ruling at trial that the statements made by Holbrook were admissible. Upon review, the trial court found Holbrook's statements, as a decedent, were inadmissible hearsay.

{¶27} The Huths appealed the May 4, 2017 judgment entry to this Court in *Huth v. Kus*, 2018-Ohio-1931, 113 N.E.3d 140 (5th Dist.). The Huths argued the trial court erred when it found Holbrook's statements were inadmissible hearsay and there was no evidence of an oral contract, unjust enrichment, or rental agreement. Upon review, we

found the trial court erred when it initially allowed Holbrook's statements to be admitted at the bench trial, then determined the statements were inadmissible. *Id.* at ¶ 40-41. Pursuant to Evid.R. 801(D)(2), Holbrook's statements were admissible as admissions of a party opponent. *Id.* at ¶ 40. Holbrook's statements were relevant to the issue of whether an oral contract existed between the parties or Holbrook was unjustly enriched, therefore we reversed the judgment of the trial court and remanded those issues to the trial court for reconsideration. *Id.* at ¶ 43. We agreed with the trial court that there was no evidence that the Huths had an agreement with Holbrook to pay rent. *Id.* at ¶ 48.

**May 8, 2019 Judgment Entry**

{¶28} Upon remand, the trial court ordered the parties to submit written arguments for a non-oral hearing. The trial court issued its judgment entry on May 8, 2019. It first found the repayment amount of the Security Agreement was $21,557.28. It next determined the evidence established Holbrook had repaid $14,800 on the note, leaving an amount due of $6,757.28.

{¶29} The Huths were in possession of some property offered as collateral in the total amount of $16,750: Voyager Pontoon Boat, inboard motor, and trailer valuing $4,800 and Mahindra Tractor valuing $11,950. The trial court found that the Huths should keep the Voyager Pontoon Boat, inboard motor, and trailer to offset the remaining $6,757,28 debt on the Security Agreement, leaving $1,957.28 due and owing to the Huths. The trial court ordered the Huths to return the Mahindra Tractor to Kus.

{¶30} It was next determined there was a valid oral contract for the loan of $32,000 from the Huths to Holbrook for which the Huths were entitled to recover. The oral contract

was not barred by the statute of frauds. Based on the existence of an oral contract, the Huths could not recover for unjust enrichment.

{¶31} It is from the May 8, 2019 judgment entry that the Huths and Kus now appeal.

**ASSIGNMENTS OF ERROR**

{¶32} The Huths raise two Assignments of Error:

{¶33} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FAILED TO ORDER THAT APPELLEE SHOULD PAY INTEREST ON THE AMOUNTS LOANED UNDER THE SECURITY AGREEMENT, DESPITE FINDING THAT THE SECURITY AGREEMENT REQUIRED PAYMENT OF VARIABLE INTEREST.

{¶34} "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION, WHEN IT ORDERED THE MAHINDRA TRACTOR TO BE RETURNED TO APPELLEE."

{¶35} Kus raises two Cross-Assignments of Error:

{¶36} "I. THE TRIAL COURT'S FINDING THAT AN ORAL CONTRACT EXISTED WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶37} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT THE ALLEGED ORAL CONTRACT WAS NOT SUBJECT TO THE STATUTE OF FRAUDS."

**ANALYSIS**

**Huths' Appeal**

**I.**

{¶38} In their first Assignment of Error, the Huths contend the trial court erred when it did not order the Estate to pay interest on the amounts loaned under the Security Agreement and Note. We disagree.

{¶39} The terms of the Security Agreement and Note stated that the Huths loaned Holbrook $25,000. The Agreement and Note set an interest rate: "In consideration of this loan, the Debtors agree to repay the principal amount of $25,000.00 with variable interest, currently 2.99 percent. Interest rate is variable, and if and when interest rate changes, debtors will be notified and the monthly payment will change accordingly." Finally, the Agreement and Note set the terms of the monthly payment as, "[t]he monthly payment will include the principal amount plus interest. The monthly payment will be $449.11 (four hundred and forty nine dollars and eleven cents)."

{¶40} Based on the express terms of the Agreement and Note, the trial court calculated the total repayment amount as $21,557.28 (four years, or 48 months, at $449.11 per month). (May 8, 2019 Judgment Entry).

{¶41} The trial court found that while the total amount of the loan stated in the Agreement and Note was $25,000, the evidence presented at trial showed the Huths provided Holbrook with $22,500 in funds. The repayment amount of the Agreement and Note was $21,557.28. Construing the ambiguous terms of the Agreement and Note against the Huths, the drafters of the documents, the trial court found the repayment amount was $21,557.28. (May 8, 2019 Judgment Entry). Holbrook had paid the Huths

$14,800. After considering the value of the collateral items in the Huths' possession and Holbrook's repayments, the trial court found the remaining balance on the Agreement and Note was $1,957.28.

{¶42} The Huths contend the trial court should have ordered the Estate to pay interest on the loan balance. A review of the Agreement and Note shows that "[t]he monthly payment will include the principal amount plus interest. The monthly payment will be $449.11." The trial court calculated the remaining balance of the loan with the monthly payment, which by the terms of the Agreement and Note, included interest. The Huths have not pointed to any evidence in the record to show they notified Holbrook of an interest rate change or adjusted the monthly payment to reflect an interest rate change. By the terms of the Agreement and Note, interest was calculated and included in the monthly payment. The trial court utilized the monthly payment to determine the amount due and owing under the Agreement and Note. We find no error to make a separate finding or award as to interest.

{¶43} The Huths' first Assignment of Error is overruled.

**II.**

{¶44} In their second Assignment of Error, the Huths contend the trial court erred when it ordered them to return the Mahindra Tractor to Kus. We agree.

{¶45} Paragraph 2 of the Security Agreement stated that "[t]o secure the Obligations, the Debtors, as debtors, hereby assigns and grants to the Secured Party, as secured party, a continuing lien on and security interest in the Collateral." Paragraph 1(a) provides that "Collateral" shall include the Debtors' tangible personal property, fixtures, leasehold improvements, trade fixtures, equipment and other personal property described

in Exhibit A. Exhibit A listed the following relevant items as collateral: "(1) Voyager Pontoon Boat; (2) Johnson inboard motor (attached to Voyager Pontoon Boat); (3) 2012 Kawasaki STX15F Jet Ski; (4) 2014 Load Rite Trailer; (5) 2013 Artic Cat; and (6) Mahindra Tractor (the value of the tractor plus the authorization to take over the financing)."

{¶46} The evidence at trial demonstrated that the Huths were in possession of some of the property offered as collateral: Voyager Pontoon Boat, inboard motor, and trailer valuing $4,800 and Mahindra Tractor valuing $11,950. In the May 8, 2019 judgment entry, the trial court found that the Huths should keep the Voyager Pontoon Boat, inboard motor, and trailer to offset the remaining $6,757,28 debt on the Security Agreement, leaving $1,957.28 due and owing to the Huths. The trial court ordered the Huths to return the Mahindra Tractor to Kus.

{¶47} The Huths argue it was error for the trial court to order the Mahindra Tractor be returned to Kus because there was an outstanding balance under the Agreement and Note. It appears the trial court did not permit the Huths to keep the Mahindra Tractor as collateral because the tractor was valued at $11,900, which was higher than the outstanding balance of the Agreement and Note after the consideration of the Voyager Pontoon Boat, inboard motor, and trailer (valued at $4,800) also in the possession of the Huths. The value of the Mahindra Tractor exceeded the amount due and owing on the Agreement and Note.

{¶48} The terms of the Agreement and Note provide that "[t]o secure the Obligations, the Debtors, as debtors, hereby assigns and grants to the Secured Party, as secured party, a continuing lien on and security interest in the Collateral." The Agreement and Note included the Mahindra Tractor as collateral to secure the obligation of Holbrook

to repay the loan. Upon the event of a default, the Huths were permitted to declare all obligations secured immediately due and payable. The Huths were further permitted to take possession of the collateral without prior notice to Holbrook or they could require Holbrook to assemble the collateral and make it available to the Huths. While the value of the Mahindra Tractor exceeds the amount due and owing on the Agreement and Note, there is no dispute there is an outstanding balance on the Agreement and Note. By the terms of the Agreement and Note, the Huths are permitted to take possession of the collateral. Kus has not pointed to any terms of the Agreement and Note where the value of the collateral must be of equal to the value of the outstanding balance of the Agreement and Note.

{¶49} In order to secure the indebtedness, Holbrook granted the Huths a security interest in the collateral listed in Exhibit A, including the Mahindra Tractor. There were no values listed on the collateral. The evidence shows an outstanding balance on the Agreement and Note, which the parties agreed to be secured with the collateral, including the Mahindra Tractor. Until the outstanding balance is resolved, we find the terms of the Agreement and Note permit the Huths to remain in possession of the Mahindra Tractor.

{¶50} The Huths second Assignment of Error is sustained.

### Kus's Cross-Appeal

### I.

{¶51} Kus argues in her first Cross-Assignment of Error that the trial court's finding that an oral contract existed between the Huths and Holbrook for the loan of additional monies was against the manifest weight of the evidence. We disagree.

{¶52} The trial court conducted a bench trial in this case. In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, the Ohio Supreme Court clarified the standard of review appellate courts should apply when assessing the manifest weight of the evidence in a civil case. The Ohio Supreme Court held the standard of review for manifest weight of the evidence for criminal cases stated in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), is also applicable in civil cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. A reviewing court is to examine the entire record and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Id.*; see also *Sheet Metal Workers Local Union No. 33 v. Sutton*, 5th Dist. Stark No. 2011 CA 00262, 2012-Ohio-3549. "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517.

{¶53} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. *Markel v. Wright*, 5th Dist. Coshocton No. 2013CA0004, 2013-Ohio-5274. Further, "an appellate court should not substitute its judgment for that of the trial court when there exists * * * competent and credible evidence supporting the findings of fact and conclusion of law." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). The underlying rationale for giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use

these observations in weighing the credibility of the proffered testimony. *Id.* Accordingly, a trial court may believe all, part, or none of the testimony of any witness who appears before it. *Rogers v. Hill*, 124 Ohio App.3d 468, 706 N.E.2d 438 (4th Dist. 1998).

{¶54} The Huths contend that pursuant to an oral contract, the Huths loaned Holbrook an additional $32,000 prior to entering into the Security Agreement and Note. The funds were used by Holbrook for his business operating expenses. The Huths argue Holbrook knew the funds were a loan he was to repay because the Huths used their personal line of credit against their home to secure the funds. If the personal line of credit was not paid, the Huths could have lost their home. Holbrook made payments on the loan directly into the Huths' personal line of credit.

{¶55} The essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained-for legal benefit and/or detriment), a manifestation of mutual assent, and legality of object and of consideration. *Spectrum Benefit Options, Inc. v. Med. Mut. of Ohio*, 4th Dist., 174 Ohio App.3d 29, 2007-Ohio-5562, 880 N.E.2d 926, ¶ 28. "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Id.* citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134.

{¶56} Kus argues the additional funds provided to Holbrook from the Huths outside to the Security Agreement and Note were gifts, not loans. Kus argues the $32,000 was given to Kus prior to the parties entering into the Security Agreement and Note. If the Huths did not consider the $32,000 a gift, why did they not include those funds when they

drafted the terms of the Security Agreement and Note, which secured a loan of only $25,000?

{¶57} The trial court examined the evidence presented at trial as to whether the $32,000 was a loan or gift. It found that the funds were not necessarily a gift because Holbrook was not a family member, the funds were used for Holbrook's business operating expenses, and the Huths had to borrow the funds to give to Holbrook. The circumstances surrounding the transfer of $32,000 to Holbrook were very similar to the transfer of the $22,500 to Holbrook. Based on the evidence presented, we agree with the trial court's determination that there was competent and credible evidence an oral contract existed between the Huths and Holbrook for the loan of additional monies, beyond those contemplated in the Security Agreement and Note.

{¶58} Kus's first Cross-Assignment of Error is overruled.

**II.**

{¶59} Kus contends in her second Cross-Assignment of Error that the trial court erred when it found the alleged oral contract for the loan of $32,000 was not in violation of the Statute of Frauds.

{¶60} Kus argues that the trial court erred in its application of R.C. 1335.05, which provides, in pertinent part:

No action shall be brought whereby to charge the defendant * * * upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be

charged therewith or some other person thereunto by him or her lawfully authorized.

{¶61} The foregoing provision "applies only to agreements which, by their terms, cannot be fully performed within a year; and not to agreements which may possibly be performed within a year." *Holloway v. Bucher*, 6th Dist. Wood No. WD-18-014, 2018-Ohio-3301, 2018 WL 3957097, ¶ 18 quoting *Sherman v. Haines*, 73 Ohio St.3d 125, 127, 652 N.E.2d 698 (1995). "[T]hus, where the time for performance under an agreement is indefinite, or is dependent upon a contingency which may or may not happen within a year, the agreement does not fall within the Statute of Frauds." *Id.*

{¶62} In *Holloway v. Bucher*, the Sixth District Court of Appeals considered an oral contract for a loan within the framework of the Statute of Frauds. 2018-Ohio-3301. The oral agreement required the appellees to make monthly payments, but the oral agreement did not include a term for early payoff. The appellant argued the Statute of Frauds should not apply because the oral agreement could have been completed within one year if the appellees paid the loan early. *Id.* at ¶ 19. The Sixth District considered a similar oral agreement discussed in *Sherman v. Haines*, 73 Ohio St.3d 125, 127, 652 N.E.2d 698 (1995):

> In that case, the agreement required the defendant to pay $3,000 to plaintiff in monthly installments of $25. *Id.* at 125. When defendant failed to make the required monthly payments, plaintiff brought a breach of contract action. Defendant filed a motion to dismiss, which was subsequently granted by the trial court upon the finding that the agreement was subject to the statute of frauds because it could not be completed within one year. *Id.* at 126.

Eventually, the matter proceeded to the Supreme Court of Ohio on a certified question as to whether "[a]n alleged oral agreement for the payment of installments is 'an agreement that is not to be performed within one year from the making thereof' pursuant to the R.C. 1335.05 Statute of Frauds when the installment payment obligation exceeds one year." *Id.* In addressing this issue, the court noted:

> Most courts that have been confronted with oral agreements to pay money in installments over a period of time in excess of one year, the terms of which either precluded an early payoff or were silent as whether the defendant could pay the entire debt at an earlier time, have held such agreements to be within the applicable one-year provision of the Statute of Frauds in their respective jurisdictions. Other than a single dissenting opinion in *Hendry v. Bird*, 135 Wash. 174, 185, 237 P. 317, 321 (1925), none of these courts has expressed the opinion that the potential for early payment amounts to a legal possibility of performance within one year sufficient to remove the agreement from the statute. In addition, those courts that have dealt with oral agreements similar to the agreement in the case sub judice, which do not specify the actual number of installment payments to be made but do provide for a periodic payment in such amount as would necessarily require more than a year to pay the entire obligation, have held such agreements subject to the statute. (Citations omitted.) *Sherman*, 73 Ohio St.3d at 127, 652 N.E.2d 698.

The court in *Sherman* went on to acknowledge the existence of cases in which oral agreements to pay money in installments over a period of time in excess of one year were held to fall outside the scope of the statute of frauds. *Id.* at 128. However, the court noted that the agreements in these cases provided for the possibility of an early payoff. *Id.*, citing *Steward v. Sirrine*, 34 Ariz. 49, 56, 267 P. 598 (1928). Because the agreement at issue required 120 monthly installment payments, and in light of the absence of any provision for early payoff within the agreement, the court found the agreement could not be completed within one year and was therefore unenforceable under R.C. 1335.05. *Id.* at 129.

Similarly here, the evidence contained in the record demonstrates that the parties did not contemplate early payoff of the loan when the agreement was reached. Consequently, early payoff was not a term of the oral agreement.

*Holloway v. Bucher*, 6th Dist. Wood No. WD-18-014, 2018-Ohio-3301, 2018 WL 3957097, ¶¶ 19-23

{¶63} In this case, as Kus states in her appellate brief, the oral contract between the Huths and Holbrook had no terms. There were no terms for repayment or for early payoff. Accordingly, the oral contract in this case can be distinguished from the oral contracts referred to above by the Supreme Court and the Sixth District in that those oral contracts had no terms for early payoff, but had clear and unambiguous terms for required monthly repayment. Looking at the oral agreements from the terms of monthly repayment, the parties could not perform the oral contracts in one year. In this case, however,

because there are no terms for repayment (monthly or otherwise), we cannot say it would have been an impossibility for Holbrook to perform the oral contract in one year. We find no error for the trial court to find this specific oral contract between the Huths and Holbrook was outside the Statute of Frauds and its one-year provision.

{¶64} Kus's second Cross-Assignment of Error is overruled.

## CONCLUSION

{¶65} The judgment of the Tuscarawas County Court of Common Pleas is affirmed in part and reversed in part. The matter is remanded to the trial court for further proceedings in accordance with this Opinion and law.

By: Delaney, J.,

Hoffman, P.J. and

Baldwin, J., concur.